In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-2231

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANIEL A. BETTY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:20-cr-20001-1 — **James E. Shadid**, *Judge.*

_____

ARGUED SEPTEMBER 11, 2025 — DECIDED AUGUST 12, 2026

_____

Before EASTERBROOK, HAMILTON, and MALDONADO, *Circuit Judges*.

MALDONADO, *Circuit Judge*. Daniel Betty pleaded guilty to two counts of sexual exploitation of a child; one count of enticement of a minor; and one count of receipt of child pornography. He was sentenced to 264 months' imprisonment, well below the advisory guidelines range of life imprisonment. On appeal, Betty challenges only his sentence, which we affirm.

**I**

## A. Factual Background

In September 2019, Betty used a dating app marketed to teenagers, Spot-a-Friend, to communicate with a 14-year-old girl, the victim. Betty, who was 27 years old at the time, listed his age on the app as 17 years old, and sent the victim, who listed her age as 14 years old, multiple sexually explicit messages.

Betty then began asking the victim to produce sexually explicit images for him, and she did so several times over the ensuing weeks. On one occasion, Betty asked to see the victim insert her fingers in her vagina, and an image depicting this act was found on the victim's cell phone time-stamped a couple days after Betty's request. On another occasion, Betty asked the victim to shave her pubic hair and the victim complied, attaching a photo.

Betty then arranged a sexual encounter with the victim. Before meeting, Betty told the victim that he was "really 19" years old, not 17. Again, Betty was in fact 27 years old at the time. The victim's friend texted Betty, telling him he was "going to jail," and Betty asked the victim if the friend was "going to report [him] to the cops." Undeterred, on October 6, 2019, Betty drove nearly an hour, picked up the victim at a park, and "engaged in vaginal sexual intercourse" with her in the backseat of his car.

Days later, the victim's mother discovered what had occurred and informed the authorities. Law enforcement quickly identified Betty, and, during an interview, Betty claimed that he had not used Spot-a-Friend since he was 19

years old. Spot-a-Friend, however, did not exist when Betty was 19 years old.

On January 7, 2020, a federal grand jury returned a four-count indictment. Counts 1 and 2 charged Betty with sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), (e), based on the two above-described occasions in which, per Betty's instructions, the victim sent Betty sexually explicit images of herself. Count 3 charged Betty with enticement of a minor, in violation of 18 U.S.C. § 2422(b), based on Betty's arrangement of a sexual encounter between him and the victim. And Count 4 charged him with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1), based on Betty's receipt of the image referenced in Count 1, depicting the victim's shaved genitalia.

Betty moved the court to set a combined plea and sentencing hearing, and the court ordered preparation of the presentence investigation report ("PSR") in anticipation of his guilty plea.

### B. PSR Calculations

In its PSR, the probation office calculated a total offense level of 43 under the United States Sentencing Guidelines ("the Guidelines"). For each count charged in the indictment, the PSR calculated the following offense levels:

- Count 1 (sexual exploitation): adjusted offense level of 36, including a two-level enhancement due to the victim's age, U.S.S.G. § 2G2.1(b)(1)(B); and a two-level enhancement for Betty's use of a computer to commit the offense, *id.* § 2G2.1(b)(6)(B).

- Count 2 (sexual exploitation): adjusted offense level of 38, including a two-level enhancement due to the

victim's age, U.S.S.G. § 2G2.1(b)(1)(B); a two-level en-
hancement for using a computer to commit the offense,
*id.* § 2G2.1(b)(6)(B); and a two-level enhancement be-
cause the offense involved the commission of a sexual
act or sexual contact, *id.* § 2G2.1(b)(2)(A).

- Count 3 (enticement): adjusted offense level of 34, in-
cluding a two-level enhancement for Betty misrepre-
senting his age, U.S.S.G. § 2G1.3(b)(2)(A); a two-level
enhancement for using a computer to commit the of-
fense, *id.* § 2G1.3(b)(3)(A); and a two-level enhance-
ment because the offense involved the commission of
a sexual act or sexual contact, *id.* § 2G1.3(b)(4)(A).

- Count 4 (receipt of child pornography): adjusted of-
fense level of 25, including a two-level reduction be-
cause the offense did not involve distribution of child
pornography, U.S.S.G. § 2G2.2(b)(1); and a five-level
enhancement for engaging in a pattern of activity in-
volving the sexual exploitation of a minor, *id.*
§ 2G2.2(b)(5).

Applying the grouping rules set forth in U.S.S.G.
§§ 3D1.2–1.4, the PSR placed each Count into its own Group,
which resulted in a three-level enhancement in the combined
adjusted offense level, yielding an offense level of 41.[1]  Next,

---

[1] The PSR assigned Count 2 one Unit because Count 2 was "the group
with the highest offense level." U.S.S.G. § 3D1.4. The PSR also assigned
Counts 1 and 3 one Unit each because those Counts had offense levels that
fell "from 1 to 4 levels less serious" than Count 2. *Id.* Count 4, however,
which had an offense level thirteen levels less serious than Count 2, was
assigned zero Units. *Id.* Because there were three Units assigned in total,
the PSR added three levels to the highest offense level of all the counts, 38,
to yield an offense level of 41. *Id.*

because Betty "engaged in a pattern of activity involving pro-hibited sexual conduct," *id.* § 4B1.5(b)(1), the PSR added an enhancement of five levels to Betty's offense level, yielding a total of 46. Finally, because he accepted responsibility and timely notified the authorities of his intention to plead guilty, he received a three-level reduction, *id.* § 3E1.1(a), (b), result-ing in a total offense level of 43. Even considering Betty's lack of criminal history, the total offense level of 43 yielded a guidelines range of life imprisonment.

Betty timely objected to the PSR on two separate theories of double counting under the grouping rules based on (1) the five-level enhancement on the receipt of child pornography count (Count 4) under U.S.S.G. § 2G2.2(b)(5), for "engage[ing] in a pattern of activity involving the sexual abuse or exploita-tion of a minor"; and (2) the five-level overall enhancement under § 4B1.5(b)(1).

### C. Sentencing

On September 8, 2020, the district court held a combined plea and sentencing hearing. After accepting Betty's guilty plea on Counts 1 through 4, the district court proceeded to sentencing. Betty's counsel argued that the application of the three-level increase under the grouping rules, and the five-level "pattern of activity" enhancement did not "make sense" because the adjustments were based on the "same victim[] [and] same course of conduct." Further, according to defense counsel, these added offense levels yielded an "absurd" guidelines range of life imprisonment despite Betty having "no criminal history whatsoever." Betty's counsel acknowl-edged, however, that "the state of the law [ ] in the Seventh Circuit" ran counter to those arguments and that the chal-lenged adjustments "may be a technically correct application

of the guidelines." The district court observed that the argument sounded more like a variance request, and Betty's counsel agreed. The district court then adopted the PSR, and both parties agreed with the PSR's calculation of a total offense level of 43 and a criminal history category of I. When asked if there were "[a]ny further additions or corrections to be offered to the Presentence Report," both the government and Betty's counsel responded, "No."

After hearing from the victim's father as to the toll that Betty's crime had taken on his daughter and their family, the government's argument that the victim "attempted to take her own life" after the crime, and defense counsel's argument that Betty suffered from major depressive disorder and autism spectrum disorder, the district court turned to the 18 U.S.C. § 3553(a) factors. The district court stated that it was fair to characterize Betty "as a perpetrator, and a manipulator, [and] likely [a] predator," but observed that "life is [ ] not an appropriate sentence here" because "it is basically the same conduct for which [Betty was] being enhanced in different manners." The district court then found that a total sentence of 264 months' imprisonment was appropriate because it was "within what would be the guideline range [ ] without the five-point enhancement, but . . . also within the middle of the statutory amounts for Counts 1 and 2." Betty now appeals.

## II

Betty challenges his sentence on four grounds: (1) misapplication of the grouping rules under U.S.S.G. § 3D1.4, resulting in impermissible double counting; (2) misapplication of a two-level "sex act" enhancement under § 2G2.1(b)(2)(A); (3) reliance on purportedly unsupported victim impact evidence; and (4) failure to discuss evidence of Betty's mental

health struggles, corresponding to the factors identified in 18 U.S.C. § 3553(a). We examine each argument in turn.

### A. Application of the Grouping Rules

Betty argues that the three-level increase under the grouping rules of U.S.S.G. § 3D1.4 constituted impermissible double counting under two separate theories.

First, Betty argues that the application of this increase along with the five-level "pattern of activity" enhancement under U.S.S.G. § 4B1.5(b), constituted impermissible "double counting" because both offense level increases involved the same victim and the same course of conduct. Betty raised this challenge in his objections to the PSR and at the sentencing hearing before the district court, so we review it *de novo*. *United States v. Wilcher*, 91 F.4th 864, 869 (7th Cir. 2024).

The argument fails at the outset because, as Betty's counsel conceded at the sentencing hearing, the Guidelines and the "state of the law [ ] in the Seventh Circuit" make clear that double counting is generally permissible. Specifically, the Guidelines provide that "enhancements, adjustments, and determinations may be triggered by the same conduct." U.S.S.G. § 1B1.1 cmt. n.4(B). And we've made clear in cases post-dating those cited by Betty that under the Guidelines, "cumulative application—that is, 'double counting'—is the default rule." *United States v. Vizcarra*, 668 F.3d 516, 521 (7th Cir. 2012); *United States v. Cook*, 850 F.3d 328, 334 (7th Cir. 2017) ("Any language in our earlier cases contradicting our holding in *Vizcarra* is no longer good law.").

Betty's second theory is that the five-level "pattern of activity" enhancement to Count 4 under U.S.S.G. § 2G2.2(b)(5) was predicated on the same conduct charged in Count 1,

which suggests the sort of commonality between the counts that should have led to grouping the two counts under § 3D1.2. As Betty contends, if he engaged in a "pattern of activity," which § 2G2.2(b)(5) defines as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant," then the counts charging these "separate instances" should have been "grouped together into a single Group" under § 3D1.2(c). Betty concedes that he did not raise this argument before the district court, so we review for plain error. *United States v. Schrode*, 839 F.3d 545, 554 (7th Cir. 2016).

Under plain-error review, the defendant bears the burden of persuasion. *United States v. Olano*, 507 U.S. 725, 734 (1993). He must show that (1) there was an error; (2) the error was plain; (3) the error "affected the defendant's substantial rights," meaning that "but for the error, the outcome of the proceeding would have been different"; and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). "Satisfying all four prongs of the plain-error test 'is difficult.'" *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Here, even assuming that Betty could show "an error that was plain, satisfying *Olano*'s first two conditions," Betty has not met his burden of showing the third condition: "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles*, 585 U.S. at 134–36 (quoting *Molina-Martinez*, 578 U.S. at 194). In particular, Betty has not "shown that the district court mistakenly

deemed applicable an incorrect, higher Guidelines range." *Molina-Martinez*, 578 U.S. at 200.

As the government correctly observes, the PSR miscalculated the offense level for the receipt of child pornography count (Count 4) in a manner advantageous to Betty, by failing to apply the cross-reference required under U.S.S.G. § 2G2.2(c)(1). "A cross-reference is an instruction to apply the offense level from another Guideline, rather than the one provided by the Guideline of the cited offense." *United States v. Taylor*, 160 F.4th 874, 881 (7th Cir. 2025) (citing U.S.S.G. § 1B1.5(a)). "It 'authoriz[es] a sentencing court to look to other guidelines provisions to impose a higher sentence on an offender under certain circumstances.'" *Id.* (quoting *United States v. Jones*, 313 F.3d 1019, 1022 (7th Cir. 2002)). Here, U.S.S.G. § 2G2.2(c)(1) provides for cross-referencing to § 2G2.1, which "establishes a much higher offense level . . . and imposes greater enhancements than the other sections" because it applies to the production, not the receipt, of child pornography. *United States v. Dawn*, 129 F.3d 878, 881 (7th Cir. 1997).

The cross-reference applies to Count 4 because, as Betty concedes, the image Betty was convicted of receiving in Count 4 is the same image he was convicted of producing in Count 1. *See* U.S.S.G. § 2G2.2 cmt. n.7 ("The cross reference in subsection (c)(1) is to be construed broadly and includes all instances where the offense involved . . . enticing [or] coercing . . . a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct."). Applying the cross-reference, the appropriate adjusted offense level for Count 4 should have been 36, not 25, as the district court found. *See* U.S.S.G. § 2G2.1. No "pattern of activity"

enhancement would have applied, however, as no such enhancement is set forth in § 2G2.1. And taking the pattern enhancement out of the equation removes the basis for grouping the counts together, insofar as the production charged in Count 1 no longer "embodies conduct that is treated as a specific offense characteristic in . . . the guideline applicable to" Count 4. *See* U.S.S.G. § 3D1.2(c); *cf. United States v. Hoover*, 95 F.4th 763, 776 (4th Cir. 2024) (challenge to "pattern-of-behavior adjustment under § 2G2.2(b)(5)" failed where "the district court followed the cross-reference provision at § 2G2.2(c)(1) and applied the guidelines at § 2G2.1" and thus, "[a]ny error in the court's initial application of § 2G2.2(b)(5) thus would be harmless.").

Furthermore, applying the grouping rules set forth in U.S.S.G. § 3D1.4 to a properly calculated offense level of 36 for Count 4, Betty's total offense level would have been one level higher than the offense level adopted by the court. Specifically, Counts 1 through 3 would still each be assigned one Unit, but now so would Count 4, yielding four Units total under the grouping rules. *See id.* § 3D1.4. Accordingly, Betty would have received a four-level increase—rather than a three-level increase—under the grouping rules set forth in § 3D1.4. As a result, the applicable guidelines range would still be life imprisonment. U.S.S.G. Ch. 5 Pt. A. And "[t]here is no need to remand for resentencing on a slightly different guideline calculation that would still result in a recommended range of life in prison." *United States v. Thomas*, 897

F.3d 807, 818 (7th Cir. 2018). Betty therefore has failed to prove prejudice under the third prong of plain-error review.

### B. Sexual Contact Enhancement

Betty next argues that the two-level enhancement applied to Count 2, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), was improper because the photo taken by the victim featuring her "vagina with two fingers inserted in it" did not depict a "sexual act" within the meaning of 18 U.S.C. § 2246(2). Betty did not raise this argument before the district court, so we review for plain error. *See Schrode*, 839 F.3d at 554.

Betty's arguments focus solely on the definition of "sexual act," the term deployed in the PSR, but the Guidelines provide for a two-level enhancement where "the offense involved . . . the commission of a sexual act *or* sexual contact." U.S.S.G. § 2G2.1(b)(2)(A) (emphasis added). "Sexual act" and "sexual contact" are defined by reference to 18 U.S.C. § 2246(2) and § 2246(3), respectively. U.S.S.G. § 2G2.1(b)(2)(A) cmt. n.2. In relevant part, "the term 'sexual contact' means the intentional touching . . . of the genitalia . . . of any person with an intent to . . . arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Several of our sister circuits have agreed that intentional self-touching by a victim is "sexual contact" for the purposes of the Guidelines. *See United States v. Butler*, 65 F.4th 199, 202 (5th Cir. 2023) ("Sexual contact" includes "both masturbation by the defendant and the coerced masturbation of a victim."); *United States v. Sanchez*, 30 F.4th 1063, 1075 (11th Cir. 2022) (rejecting argument that the victims' "masturbation does not amount to a sexual act or sexual contact within the meaning of the" application of the two-level enhancement under

U.S.S.G. § 2G2.1(b)(2)(A)); *United States v. Raiburn*, 20 F.4th 416, 422 (8th Cir. 2021) ("Following our sister circuits, we reject [defendant]'s arguments and hold that the plain meaning of 'sexual contact' under U.S.S.G. § 2G2.1(b)(2)(A) . . . includes the act of masturbating") (internal quotation omitted); *United States v. Pawlowski*, 682 F.3d 205, 213 (3d Cir. 2012) (where the defendant caused the minor victim to masturbate, such masturbation was "a form of 'sexual contact.'"); *United States v. Shafer*, 573 F.3d 267, 279 (6th Cir. 2009) (concluding that because the victim's "self-masturbation constitutes 'sexual contact,' . . . the district court did not err in imposing a § 2G2.1(b)(2)(A) enhancement in calculating [defendant]'s sentence upon his conviction for violating 18 U.S.C. § 2251(a)").

We agree. The undisputed conduct here meets the definition of "sexual contact" under the Guidelines, and therefore, regardless of whether the PSR mentioned only a "sexual act" rather than "sexual contact," the two-level enhancement for Count 2 was not in error.

## C. Inclusion of Evidence About the Victim's Suffering

Third, Betty argues that the government relied on unproven or unreliable evidence at sentencing to urge the imposition of a "lengthy sentence." In particular, Betty objects to the district court's adoption of the government's assertions that the victim "attempted to take her own life," and will spend the rest of her "lifetime . . . recovering from this incident," and that "there were other purported minors that [Betty] was chatting with." Betty did not raise this argument

before the district court, so we review for plain error. *See Schrode*, 839 F.3d at 554.

A district court may not rely on "'materially untrue' assumptions" in imposing a sentence. *United States v. Barnes*, 907 F.2d 693, 696 (7th Cir. 1990) (quoting *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). But a defendant "may admit far more than the elements of the charged crime . . . by agreeing with the government's factual basis, or even by answering the judge's questions during the plea colloquy." *United States v. Robinson*, 964 F.3d 632, 640 (7th Cir. 2020). And a district court is entitled to rely on such admissions. *United States v. Longstreet*, 567 F.3d 911, 929 (7th Cir. 2009).

Here, during the plea colloquy, Betty admitted, without qualification, that the factual basis of his charges was correct. This admission included the government's contention that Betty was "chatting with" "other purported minors." Betty also did not dispute the government's statements at sentencing outlining the significant psychological toll that his conduct had taken on the victim. Nor did he object to the victim impact statement provided by the victim's father explaining that Betty "changed [the victim's family's] lives forever" and forced them to deal with "doctors' visits and counseling." Instead, Betty's counsel argued that Betty was responsible only for "a part of" "what she's suffering right now." But this objection does not refute the government's contention that the victim attempted suicide and faced substantial future suffering. Given Betty's agreement to the factual basis underlying his charge, his failure to object to the government's comments about the psychological toll his actions took on the victim, and his agreement that the victim was suffering psychologically and he was in part to blame, Betty cannot show that the

district court committed plain error by relying on any inaccurate information.

### D. Application of the 18 U.S.C. § 3553(a) Factors

Last, Betty argues that the district court failed to address his arguments as to the 18 U.S.C. § 3553(a) sentencing factors because it did not discuss the "absurd[ity]" of a guidelines range of life imprisonment considering Betty's offense, Betty's relevant psychological conditions, or the need to avoid sentence disparities among similarly situated defendants. We review the adequacy of a district court's explanation of its sentence *de novo*. *Wilcher*, 91 F.4th at 870.

A district court must adequately explain its sentence with reference to the 18 U.S.C. § 3553(a) factors, and it must address a defendant's principal arguments in mitigation, but, as Betty concedes, a district court is not required to address every factor or respond to every argument. *United States v. Hendrix*, 74 F.4th 859, 867–68 (7th Cir. 2023). Instead, "[i]t is enough that the court considers the § 3553(a) factors and articulates why its sentence is appropriate on a reviewable record." *Id.* at 867. And "[a] district court's treatment of a mitigation argument 'can be implicit or imprecise and does not need to be extensive,' as long as we can recognize that the judge considered the argument." *United States v. Patel*, 921 F.3d 663, 670 (7th Cir. 2019) (quoting *United States v. Tounisi*, 900 F.3d 982, 987 (7th Cir. 2018)).

The district court here explained Betty's sentence in sufficient detail, and with appropriate reference to both the § 3553(a) factors and Betty's mitigation arguments. Touching on Betty's absurdity argument, the district court stated, "[A] significant sentence is appropriate. The Guidelines call for

life. I think that life [ ] will not be an appropriate sentence here. I think the statute is more in line with an appropriate sentence." Addressing Betty's psychological conditions, the district court also observed that "there were clearly a number of issues that [Betty] found himself in to indicate problems in his life." As to sentence disparities—which Betty did not raise during the sentencing hearing—the district court's "correct calculation of the Sentencing Guidelines' range and imposition of a below-Guidelines sentence means that it necessarily considered the need to avoid unwarranted disparities." *United States v. Seymour*, 94 F.4th 679, 687 (7th Cir. 2024). We have affirmed far longer sentences for defendants "involved in producing child pornography, even where the victims were not molested in the process." *United States v. Klug*, 670 F.3d 797, 801 (7th Cir. 2012) (collecting cases). We can recognize the district court's consideration of the relevant arguments, thus, it adequately explained Betty's sentence. *Patel*, 921 F.3d at 670.

Accordingly, we AFFIRM the judgment of the district court.